IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| DESIGN BASICS, LLC,<br>and PLAN PROS, INC.,<br><br>    Plaintiffs,<br><br>vs.<br><br>AHMANN DESIGN, INC.,<br>AHMANN HOME PLANS, INC.,<br>JOSEPH GERARD AHMANN,<br>and DONNA L. AHMANN,<br><br>    Defendants. | No. C16-0015<br><br>ORDER REGARDING DISCOVERY |

On the 28th day of July 2016, this matter came on for hearing on the Motion for Protective Order and Ruling Regarding Cost Shifting (docket number 34) filed by the Defendants on June 28, 2016. The Plaintiffs were represented by their attorney, Mark E. Liabo. Defendant Joseph Ahmann appeared personally and was represented by his attorney, Matthew G. Novak.

## I. PROCEDURAL HISTORY

On January 20, 2016, Plaintiffs Design Basics, LLC and Plan Pros, Inc. (collectively "Design Basics") filed a complaint against Defendants Ahmann Companies, Inc., Ahmann Design, Inc., Ahmann Home Plans, Inc., Ahmann Properties, LLC, Joseph Gerald Ahmann, and Donna L. Ahmann (collectively "Ahmann"), seeking damages for alleged copyright infringement. Design Basics filed an amended complaint on March 18. Ahmann filed an answer to the amended complaint on March 31.

On May 6, 2016, the Court entered a Scheduling Order and Discovery Plan. In reliance on the deadlines established in the Order, trial is now scheduled before Chief Judge Linda R. Reade beginning on July 24, 2017.

On June 20, 2016, the Court filed a Stipulated Protective Order agreed to by the parties. On June 28, Ahmann filed the instant motion for protective order asking the Court to limit Design Basics' discovery and to shift the costs of obtaining the requested documents. Design Basics resists, and asks that Ahmann be required to provide all documents pertaining to any residence designed by Ahmann at any time.

## II. BACKGROUND

Joseph Ahmann testified he has been designing buildings since 1985. In 1991, Ahmann started Ahmann Design, Inc. and Ahmann Home Plans, Inc., and owns 50% of each business.[1] Ahmann sells "stock plans" (also referred to as "marketed plans") and "custom plans." Ahmann has developed more than 10,000 custom plans. It also markets approximately 1,100 stock plans.

According to Ahmann, a typical transaction involves a customer coming to Ahmann to develop a home plan. An Ahmann representative would speak with the customer and obtain information regarding the preferred home design, square footage, and budget. Ahmann would then typically show the customer potential stock plans contained in "3-ring binders of plans." More recently, customers are able to view stock plans on the computer. If changes are required, then Ahmann modifies the stock plan and it becomes a custom design. If Ahmann believes the redesigned plan has "marketability," then it can be identified as a stock plan and marketed more generally. Most often, however, the custom plans are used only once.

Ahmann has a website which allows customers to enter criteria in a search engine and view a three-dimensional color rendering of the home. The website also shows floor plans and, in most cases, front and rear renderings of the house. Ahmann acknowledged that locating the construction plans for a stock design is "a relatively quick and easy thing to do." However, "to go back to the date of origin requires more work."

---

[1] The record is silent regarding the remaining owner or owners, but Donna L. Ahmann is also a named Defendant.

In its amended complaint, Design Basics identified 14 stock plans on Ahmann's website, which Design Basics claims improperly infringe on the copyright of 8 Design Basics' plans. Ahmann testified he spent approximately 70 hours to go back to the "date of origin" of the 14 allegedly infringing plans. According to Ahmann, it was necessary to manually review paper files located in banker boxes in Ahmann's storage facility. (Photographs of the area were introduced as Defendants' Exhibits P, Q, R, and S.) While the plans are supposed to be stored chronologically, Ahmann credibly testified that was not always the case. Each banker's box contains between 100 and 150 job files, and it was sometimes necessary to search the boxes before or after the target year in order to find the requested information.

In the fall of 2013, Ahmann acquired a software update which apparently makes searching for files more efficient. It is still the case that a project may be labeled by job number, lot number, a customer's name, or a builder's name, but generally a computer search will locate the project relatively quick and easy "compared to the old way." To obtain a file prior to 2013, however, it is necessary to manually search the paper documents using a name, year, or project number.

Design Basics asks Ahmann to produce all documents relating to every building Ahmann has designed over the past 25 years. To support its claim, Design Basics points to an email exchange between Allison Green, a client services representative at Ahmann, and Mike Sattler, a home builder, on February 2-3, 2010. Sattler purchased a home design from Design Basics and took it to Ahmann to be modified. When Ahmann sent Sattler a bill, it included not only the revision cost but also $280 for a "plan purchase cost." Sattler responded, indicating he "cross[ed] off the plan purchase cost being that was our plan like I mentioned before from a design basic plan originally."[2] After it was determined that Sattler had purchased the original plan from Design Basics, the

---

[2] Design Basics' Exhibit J at 3 (docket number 37-10 at 3).

3

"construction license cost" was removed. Ms. Green wrote that "I was not aware that Ahmann revised Design Basic plans at one time."[3] Design Basics believes this email is a smoking gun, showing that Ahmann would prepare a custom plan by infringing on Design Basics' copyright.

At the hearing, Ahmann testified that occasionally a customer would purchase a plan from Design Basics, thereby acquiring the right to build the house or modify the plan, and bring it to Ahmann for revisions. Ahmann testified that Ahmann Design does not revise a Design Basics plan unless the builder or homeowner has a license to do so. According to Ahmann, Ms. Green's email was not intended to imply that Ahmann would infringe on a Design Basics plan by revising it without proper authority, and should not be read in that way.

### III. DISCUSSION

On March 31, 2016, Design Basics served Ahmann with 17 requests for production of documents and 13 interrogatories.[4] Ahmann filed responses and objections on June 8, 2016.[5] Ahmann filed amended objections and responses to the request for production of documents on June 14, 2016.[6] Ahmann's attorney advised the Court at the hearing that he would produce additional documents pertaining to the 14 allegedly infringing plans within the next week. Ahmann argues, however, that production of documents relating to other Ahmann home designs is irrelevant, disproportional, and incredibly expensive.

FEDERAL RULE OF CIVIL PROCEDURE 26(b)(1), as recently amended, describes the scope of discovery in a civil action:

---

[3] *Id.* at 2.

[4] *See* Design Basics' Exhibit B (docket number 37-2).

[5] *See* Design Basics' Exhibit C (docket number 37-3).

[6] *Id.*

4

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). Within the scope of discovery set forth in RULE 26(b), a party may request another party to produce and permit the inspection of documents or electronically stored information. RULE 34(a)(1)(A). The party to whom the request is directed must either state that inspection will be permitted or state with specificity the grounds for objecting to the request. RULE 34(b)(2)(B). Instead of permitting inspection, the responding party may produce copies of the requested documents or electronically stored information. *Id.*

In response to Design Basics' request for production number 1, Ahmann agreed to produce the documents pertaining to the allegedly infringing plans, as set forth in Design Basics' amended complaint. Ahmann agreed to produce the documents "subject to the entry of a Protective Order and an agreement or Court order determining the scope and cost-shifting of discovery in this case." A stipulated protective order has been filed, and Ahmann has now agreed to produce the documents relating to the allegedly offending plans without further objection.

In its second request for production, Design Basics asks for CAD files, or alternatively a complete set of blueprints, for every house design created by Ahmann in the last 23 years. Ahmann objects to the request as overbroad, unduly burdensome, and "not proportional to the needs of the case." Ahmann again indicates that it will produce the requested documents relating to the plans identified in the amended complaint. Joseph Ahmann testified at the hearing that he spent 70 hours compiling the documents relating

to the 14 plans, and Ahmann's attorney advised the Court that those would be produced shortly.

Requests for production numbers 3-17 seek documents relating to revenue generated through the sale of the allegedly infringing plans, HUD forms, off-sets, information regarding expert witnesses, affirmative defenses, communications, insurance, catalogues, and websites. Generally, Ahmann either produced the documents, agreed to produce the documents when available, or stated they did not exist. These requests are not the focus of Ahmann's motion for protective order and were not addressed at the time of hearing.

The fighting issue at the time of hearing was whether Ahmann is required to produce for inspection all documents relating to every home design created by Ahmann in the last 23 years. This includes more than 1,100 stock plans and more than 10,000 custom plans. Compliance would require production of hundreds of thousands of pages, the vast majority of which are not found in computer storage but are, instead, located in banker boxes.

Prior to filing its complaint, Design Basics presumably reviewed the 1,100+ stock plans marketed by Ahmann on its website, and identified 14 allegedly infringing plans. That is, Design Basics has not claimed the remaining stock plans infringe on Design Basics' copyright. Accordingly, documents relating to the non-infringing stock plans are irrelevant, and not subject to production under RULE 26(b).

Design Basics suspects, however, that some of the custom plans may infringe on Design Basics' copyrights and, therefore, demands production of all documents relating to more than 10,000 custom plans. The only evidence suggesting possible infringement by a custom plan is the email from Allison Green to Mike Sattler in February 2010. In my view the email is ambiguous at best and, standing alone, does not justify the substantial production requested by Design Basics. A single email by a client services representative who is unfamiliar with the facts is flimsy evidence of copyright infringement, and does not

justify the vast discovery urged by Design Basics. Instead, an incremental approach is appropriate.

As made clear by the recent amendment to RULE 26(b)(1), discovery must be proportional to the needs of the case. Here, the factors identified in RULE 26(b)(1) do not justify production of hundreds of thousands of pages by manually copying house plans extending back more than 20 years. The Court concludes, however, that Design Basics should be given a limited opportunity to inspect the documents to determine whether there is any evidence supporting its claim that Ahmann infringed on Design Basics' copyrights when preparing custom plans.

The Court concludes that a representative of Design Basics will be permitted to inspect the documents stored by Ahmann in banker boxes to look for evidence of copyright infringement. The inspection will be limited to a single day, on a date to be agreed to between the parties, from 9:00 a.m. until 4:00 p.m. The Design Basics representative may remove documents from a banker box for inspection, but they must then be returned to the box in the same condition. The inspection may be supervised by a representative of Ahmann. Whether any additional inspection will be permitted may depend on what evidence, if any, is discovered in the first inspection.

## IV. ORDER

IT IS THEREFORE ORDERED that Ahmann's Motion for Protective Order (docket number 34) is **GRANTED in part** and **DENIED in part**. A representative of Design Basics will be permitted to inspect documents stored by Ahmann pursuant to the conditions set forth above.

DATED this 10th day of August, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA